UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

PILAR TORRES,

Debtor.

Chapter 7
Case No. 10-12124 (JNF)

## CHAPTER 7 TRUSTEE'S OBJECTION TO CERTAIN AMENDED EXEMPTIONS CLAIMED BY THE DEBTOR

Pursuant to Fed. R. Bankr. P. 4003, Joseph Braunstein, the Chapter 7 Trustee (the "**Trustee**") of Pilar Torres (the "**Debtor**"), hereby objects to the Debtor's second amendment to her exemptions wherein she seeks to fully exempt a settlement on a certain prepetition personal injury claim (the "**P.I. Claim**") pursuant to 11 U.S.C. §§ 522(d)(5), (d)(11)(D) and (E), on the grounds that (a) the Debtor's bankruptcy estate (the "**Estate**"), its general unsecured creditors (the "**Creditors**") and the Trustee will be greatly prejudiced by the allowance of the amended exemptions, (b) the Debtor (having failed to disclose the P.I. Claim in her original Schedules) claimed certain exemptions in the P.I. Claim upon the reopening of this case and the Trustee relied on those chosen exemptions to proceed to prosecute the P.I. Claim, realize the Settlement and notify the Creditors of the funds available for distribution, and (c) the Debtor should be estopped from now again amending her exemptions based on the equities of the circumstances, the doctrine of latches and the Trustee's detrimental reliance. In support of this Objection, the Trustee represents as follows:

### Background

1.  On March 1, 2010, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code. On March 2, 2010, Joseph Braunstein was

appointed interim Chapter 7 Trustee. The meeting of creditors required pursuant to 11 U.S.C. § 341 was held on April 6, 2010. The Debtor's discharge was entered on June 8, 2010 and the case was closed on June 11, 2010.

2.  The Debtor's original Schedules of Assets and Liabilities (the "**Schedules**") did not disclose the P.I. Claim. The Trustee only became aware of the P.I. Claim when he was contacted by Thomas J. DiBiase, Esq., and the law firm of Joel H. Schwartz, P.C. (the "**Firm**"). The Firm was representing the Debtor in relation to the P.I. Claim. Thereafter, on December 15, 2010, the Debtor filed a motion to reopen the case and disclosed the P.I. Claim on her Schedules.[1] In her amended Schedules, the Debtor valued the P.I. Claim at $15,000.00 and sought to exempt the P.I. Claim in the amount of $8,540.31 pursuant to 11 U.S.C. § 522(d)(5) (the "**First Amended Exemptions**"). The Order re-opening this case was entered on January 18, 2011.

3.  On January 19, 2011, the Trustee filed a Withdrawal of No Distribution Report, based on the fact that there now appeared to be a viable asset that the Trustee needed to investigate.

4.  Following discussions with the Firm, and based on the First Amended Exemptions, the Trustee made the decision to pursue the P.I. Claim. To that end, on January 25, 2011, the Trustee filed an application to employ the Firm as special counsel to represent and provide legal services to the Trustee solely with respect to the P.I. Claim (the "**Firm Application**"). A copy of the Firm Application was served on the Debtor and her counsel on January 25, 2011. No responses or objections were filed to the Firm Application and it was allowed on February 10, 2011.

---

[1] That motion was denied without prejudice to renewal with a verified declaration that contained the correct number

2

5.  On January 25, 2011, the Trustee also sought to employ Riemer & Braunstein LLP ("**RB**"), as counsel to the Trustee (the "**Riemer Application**"). A copy of the Riemer Application was served on the Debtor and her counsel on January 25, 2011. No responses or objections were filed to the Riemer Application and it was allowed on January 26, 2011.

6.  As a result of negotiations on the P.I. Claim, the parties agreed to a settlement of $65,000.00, subject to this Court's approval (the "**Settlement**"). Accordingly, on April 5, 2011, the Trustee filed a motion to approve the Settlement wherein he represented that a total of $38,750.43 would come into the Estate for distribution to creditors, minus certain medical provider liens in the amount of $2,250.47. The Trustee served the Settlement and notice of the objection deadline (April 27, 2011) on the Debtor, her counsel and all creditors and parties-in-interest. In connection with the Settlement, the Trustee anticipated that the Debtor would be entitled to her exemption of $8,540.31. He also anticipated a likely 100% distribution would be made to general unsecured creditors, which claims totaled approximately $17,000.00, according to the Schedules.[2]

7.  On April 19, 2011, the Trustee filed an application to employ Steven A. Gabovitch (the "**Accountant**"), as accountant to provide general accounting services to the Trustee and to otherwise assist the Trustee in carrying out his duties (the "**Accountant Application**"). The Trustee requires the services of the Accountant to, among other things, determine any tax consequences to the Debtor's bankruptcy estate (the "**Estate**") arising from the Settlement. The Trustee also needs the Accountant's assistance to prepare and file the tax returns on behalf of the Estate made necessary by the Settlement. A copy of the Accountant

---

of pages pertinent to the amended schedules. A renewed motion to reopen and amended Schedules were filed on January 14, 2010.

[2] On April 6, 2011, the Trustee requested this Court to issue a bar date. The last day for creditors to file claims is July 6, 2011.

3

Application was served on the Debtor and her counsel on April 19, 2011. No responses or objections were filed to the Accountant Application and it was allowed on April 20, 2011.

8. On April 27, 2011, the Debtor filed the Debtor's Second Motion to Amend Schedule C in which the Debtor seeks to exempt the entire Settlement as follows: $10,825.00 pursuant to 11 U.S.C. § 522(d)(5); $1,090.31 pursuant to 11 U.S.C. § 522(d)(5)[3]; $21,625.00 pursuant to 11 U.S.C.§ 522(d)(11)(D)[4]; and $36,499.96 pursuant to 11 U.S.C. § 522(d)(11)(E) (collectively, the "**Second Amended Exemptions**").

9. No objections were filed to the Settlement and it was allowed by this Court on April 28, 2011.

### Objection

10. The Estate, the Creditors and the Trustee would suffer great prejudice if the Second Amended Exemptions are allowed. *See, e.g., In re Gravemann*, 2009 WL 4921416 (Bankr. S. D. Ill. 2009) (denying amended exemptions when, despite notice that trustee was pursuing personal injury settlement, debtor failed to timely amend exemptions which prejudiced estate by having settlement approved on basis of unsecured creditors receiving distribution).

11. Fed. R. Bankr. P. 1009(a) provides that a debtor may amend a voluntary petition "as a matter of course at any time before the estate is closed." *See, e.g., Hannigan*, 409 F.3d 480, 481-482 (1st Cir. 2005). However, a bankruptcy court has discretion to deny an amendment of exemptions upon a showing of prejudice or bad faith. *See id.*

---

[3] In seeking her exemption, the Debtor is claiming the incorrect dollar amounts. She is claiming the dollar figures revised for cases filed *after* April 1, 2010, but her case was filed on March 1, 2010. Accordingly, the total amount the Debtor is now seeking to exempt under 11 U.S.C. § 522(d)(5) is $11,915.31, which given the other exemptions the Debtor is claiming under that section (cash in the amount of $20.00, and checking account in the amount of $39.69) would be over the Debtor's allowed § (d)(5) exemption ($11,200.00) by $775.00.

[4] This exemption is $20,200.00 for cases filed prior to April 1, 2010.

4

12. Allowing the Debtor to amend her exemptions at this late date would greatly prejudice the Creditors whose rights have attached to the proceeds of the Settlement. *In re Romano*, 378 B.R. 454, 468 (Bankr. E.D. Pa. 2007) (*citing In re Snow*, 21 B.R. 598, 600 (Bankr. E.D. Cal. 1982) (allowing amended exemptions would adversely impact creditors whose rights have attached to assets of bankruptcy estate). This is true because, despite receiving notice of the Settlement and the resulting likelihood that they will receive a full distribution on their claims, they will receive no distribution at all. *See In re Szymanski*, 189 B.R. 5, 7 (Bankr. N.D. Ill. 1995) (holding that, as debtor did not amend schedules until after notice of settlement was sent to creditors and because of their expectation that settlement would be made available to pay claims, creditors would be prejudiced by amendment); *In re Jelinek*, 97 B.R 429, 431 (Bankr. N.D. Ill. 1989) (holding that creditors were also prejudiced in that notices seeking approval of settlement indicated they would be receiving portion of settlement).

13. The Trustee and the Estate would also suffer great prejudice if the Second Amended Exemptions are allowed, because the Trustee detrimentally relied on the First Amended Exemptions in pursuing the Settlement (including hiring professionals and obtaining this Court's approval) and notified creditors of the resulting distribution and their ability to file claims. *See Szymanski*, 189 B.R. at 7 (noting that trustee sought to compromise claim and reach settlement without any knowledge that debtor would claim exemption in settlement proceeds). "One indicia of prejudice appears to be the existence *vel non* of reliance made upon the debtor's exemption election prior to the proffered amendment." *Romano*, 378 B.R. at 467-68.

> Thus, prejudice may arise, for example, where a trustee has incurred considerable expense in efforts to [administer assets of an estate], which efforts he or she might have foregone had the debtor initially claimed such property as exempt. That is, in those instances the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed.

5

Id. at 468. *See also Matter of Eldridge*, 15 B.R. 594, 595 (Bankr. S.D.N.Y. 1981) (debtor's attempt to change exemptions after trustee had contracted to sell subject property was disallowed); *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1324 (5th Cir. 1988) (prejudice may occur if creditors have detrimentally relied upon debtor's original exemption claim).

14. The Trustee argues that the Debtor should be precluded from amending her exemptions to include the Settlement through laches and detrimental reliance. *See, e.g., In re Graves*, 212 B.R. 692, 697 (1st Cir. B.A.P. 1997) ("courts are reluctant to come to the aid of a party who has knowingly slept on his rights under circumstances where he might have earlier asserted such rights in the exercise of due diligence"); *Tully v. State*, 143 Ill.2d 425, 432 (1991) (recognizing that laches is equitable doctrine which precludes assertion of claim by litigant whose unreasonable delay in raising that claim has prejudiced opposing party). The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party. *See Id.* "As explained by the First Circuit, in applying laches, a court must examine whether the plaintiff's delay in bringing its claim was unreasonable and whether the defendant was prejudiced by the delay." *Graves*, 212 B.R. at 697 (*citing McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 3 (1st Cir. 1991) (*citing Puerto Rican–Am. Ins. Co. v. Benjamin Shipping Co., Ltd.*, 829 F.2d 281, 283 (1st Cir. 1987))); *see also Tully*, 143 Ill.2d at 432 (holding that two elements are necessary to finding of laches (a) lack of diligence by party asserting claim, and (b) prejudice to opposing party resulting from delay).

15. The Debtor sat on her rights for close to five (5) months and allowed the Trustee to incur the expense associated with administering the P.I. Claim, achieving the Settlement, and informing creditors that there would be a distribution. If the Debtor had sought to enforce her

rights at the proper time, then the Trustee may have determined not to administer the P.I. Claim and would have re-closed the case without incurring any significant delay or expense.

16. Despite the rule to liberally allow amendments, the Debtor should have to live with the consequences of the exemptions she chose upon the reopening of the case and her failure to exercise due diligence in relation to her exemption rights. There must be a point where the Debtor's election of exemptions must become irrevocable so as to avoid unfair prejudice to the Trustee and the Creditors. *See In re Romano*, 378 B.R. at 468-69 (recognizing that at some point there must be finality to amendments) (*citing In re Brewer*, 17 B.R. 186, 188 (Bankr. M.D. Tenn.), aff'd, 22 B.R. 983 (M.D. Tenn. 1982) (holding that at some point there must be some finality of choice); *see In re Duggan*, 4 B.R. 709, 711 (Bankr. N.D. Tex. 1980) (same); *see also In re Reed*, 1995 WL 227389 (9th Cir.1995) (holding that debtor lost entitlement to amend by "plung[ing] the bankruptcy estate into lengthy litigation," and by not requesting amendment in seasonable manner)).

17. The Debtor should be estopped from claiming the Second Amended Exemptions because there is no reason to justify her failure to preserve her rights in the exemptions she now seeks to claim. The prejudice to the Estate, the Creditors and the Trustee outweigh any prejudice to the Debtor, because this is a situation of her own doing, and a direct result of her failure to preserve her rights. There is no reason for her to have neglected to claim such exemptions and there is no reason why she could not have attempted to claim those exemptions in her First Amended Exemptions. There has been no change in circumstances since this case was reopened and the causes of action underlying the P.I. Claim have not changed. This case was re-opened to solely administer the P.I. Claim. The Debtor was aware, and received notice, that the Trustee was pursuing the P.I. Claim. Because the Debtor immediately filed the First Amended

Exemptions to claim $8,540.31 of the P.I. Claim as exempt, and because she filed no responses to the various employment applications, there was no reason for the Trustee to believe that pursuing the Settlement on behalf of the Estate would be a futile exercise. She did not file any response to the Settlement and she waited for the objection period to expire before she filed the Second Amended Exemptions.

18. Additional prejudice would be suffered by the Estate and the Trustee because, based on the First Amended Exemptions, the Trustee did not seek to have the Firm separately categorize the "elements" that lead to the amount of the Settlement (*i.e.*, pain and suffering, lost earnings, personal bodily injury) – if that is even possible. If the Second Amended Exemptions are allowed, then the Trustee would be forced to litigate the issues of what amounts the Debtor would be entitled to claim under 11 U.S.C. §§ (d)(11)(D) (personal bodily injury)[5] or (E) (loss of future earnings).[6]

19. In that instance, the Trustee would assert, based on discussions with the Firm, that the Debtor would not be entitled to the full amounts she seeks in the Second Amended Exemptions. This is true because it is very difficult to "categorize" the elements of damage in this type of settlement due to a myriad of issues that affect the value of the case. The Settlement was reached as a result of a compilation of the various factors (negligence/liability, risk of litigation, pain and suffering, bodily injury, loss of past and future earnings, etc.). The Firm indicated that the Debtor's loss of future earnings would be deemed speculative given several intervening and unrelated medical issues/conditions that the Debtor was dealing with during the

---

[5] 11 U.S.C. § 522(d)(11)(D) allows debtors to exempt "a payment, not to exceed $21,625(*), on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent . . . ."

[6] 11 U.S.C.§ 522(d)(11)(D) allows debtors to exempt "a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

pendency of the P.I. Claim. The Firm further advised the Trustee that any trier of fact would be likely to reject or at least reduce in value any alleged future lost earnings that are claimed in relation to the P.I. Claim due to the other medical issues that the Debtor was contemporaneously experiencing. Such future earnings would be further reduced by the fact that the Debtor started receiving social security disability payments in July 2010.

## Conclusion

20. Based on the foregoing the Trustee asserts that the Second Amended Exemption should be denied. If this Court is inclined to allow the Second Amended Exemptions to any extent, then the Trustee asserts that (a) the exemptions claimed therein should comport with and be limited to the maximum amounts allowable under the Code for cases filed prior to April 1, 2010; (b) any exemption under 11 U.S.C. §§ (d)(11)(D) be limited to reflect that the Settlement included a consideration of pain and suffering and actual pecuniary loss, (c) any exemption under 11 U.S.C. §§ (d)(11)(E) be limited to reflect that loss of future earnings were likely not a major factor in the settlement and, in any event, are not necessary for her support, (d) the Trustee should be allowed to recover the costs associated with reaching the Settlement and all attending costs, including, but not limited to, the fees and costs incurred by the Trustee and his professionals, and (e) the fees and expenses of the Firm and the medical liens in the total amount of $2,250.47, should be paid as allowed in the order approving the Settlement.

21. The Trustee reserves all rights to amend or supplement this objection, if necessary.

WHEREFORE, the Trustee requests that this Court enter an order (a) denying the Second Amended Exemptions and limiting the Debtor's exemption therein to the amount listed in First

Amended Exemptions ($8,540.31), and (b) granting such other and further relief as is just and proper.

|  |  |
|---|---|
| Dated: May 10, 2011 | JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE OF THE ESTATE OF PILAR TORRES<br><br>By his attorneys,<br>RIEMER & BRAUNSTEIN LLP<br><br>*/s/ Kristin M. McDonough*<br>Joseph Braunstein (BBO #054680)<br>Kristin M. McDonough (BBO #637899)<br>Riemer & Braunstein LLP<br>Three Center Plaza<br>Boston, Massachusetts 02108<br>kmcdonough@riemerlaw.com<br>(617) 523-9000 |

10

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>PILAR TORRES,<br><br>Debtor. | Chapter 7<br>Case No. 10-12124 (JNF) |

## CERTIFICATE OF SERVICE

I, Kristin M. McDonough, with the law firm of Riemer & Braunstein LLP, hereby certify that I caused to be served on May 10, 2011, a true and correct copy of the **CHAPTER 7 TRUSTEE'S OBJECTION TO CERTAIN AMENDED EXEMPTIONS CLAIMED BY THE DEBTOR,** by first class United States mail, postage pre-paid, or electronic notification (EN), where indicated, upon the following interested parties:

Office of the United States Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV  (EN)

Alfred Phillips, Esq.
8 Cutting Cross Way
Wayland, MA 01778
phillips226@comcast.net, cpalmieri@mwlegal.org;aphillips@mwlegal.org

Pilar Torres
828 Waverly Street, Apt 1
Framingham, MA 01702

Thomas J. DiBiase, Esq.
Joel H. Schwartz, P.C.
One Washington Mall, 16th Floor
Boston, MA 02108

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114

Internal Revenue Service
Special Procedures Function STOP 20800
P.O. Box 9112
JFK Building
Boston, MA 02203

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

/s/ Kristin M. McDonough
Joseph Braunstein (BBO #637899)
Kristin M. McDonough (BBO #637899)
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
kmcdonough@riemerlaw.com

1300733.1

2